IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | | |
|---|---|---|
| JOHN P. ELMORE, et. al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 3:11-cv-5088-DGK |
| | ) | |
| CONNIE MANSFIELD, et. al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING IN PART DEFENDANT ARNOTT'S MOTION TO DISMISS**

This case arises out of allegations that Defendants caused Plaintiff John Elmore's daughters, Plaintiffs Sarah and Rachael Elmore, to be wrongfully removed from his custody and subjected to a traumatic and humiliating investigation into false sexual abuse claims. Plaintiffs have brought multiple claims for damages under 42 U.S.C. § 1983 and Missouri state law.

Now before the Court is Defendant Joanna Arnott's Motion to Dismiss Plaintiff's Complaint (Doc. 18). Arnott, John Elmore's ex-girlfriend and the children's mother, raises ten arguments in support of her motion to dismiss portions of the Complaint against her.

For the following reasons, the motion is GRANTED IN PART. Counts IV and X are dismissed without prejudice against Defendant Arnott. The Court orders the parties to submit additional briefing with respect to Count V. The balance of the motion is denied.

**Background**

The fifteen pages of factual allegations in the Complaint can be summarized as follows. In the late 1990s, Plaintiff John Elmore ("Elmore") had a long-term romantic relationship with Defendant Joanna Arnott ("Arnott"). Two children were born from this relationship; Plaintiff Rachael Elmore in 1996, and Plaintiff Sarah Elmore in 2000 (collectively "the children").

The relationship between John Elmore and Arnott concerning custody of their children was contentious. Elmore repeatedly had to go to court to enforce his visitation rights with his children. A joint custody order was initially entered, but because Arnott repeatedly failed to abide by its conditions, the Circuit Court of Stone County, Missouri, granted Elmore full custody of the children in 2004. Arnott, however, retained visitation rights.

After losing custody of the children, Arnott began to repeatedly make false allegations that Elmore was abusing the children in order to regain custody. Over time, Arnott's repeated false allegations became well-known within the law enforcement and child welfare communities in southwest Missouri.

On October 6, 2006, an anonymous female called the Missouri Department of Family Services ("DFS") and claimed that Elmore had sexually abused his children. The details of these allegations matched the details of allegations that the Circuit Court of Stone County had previously found Arnott had been pressuring the children to falsely make against their father. While the children were in Arnott's custody, Defendant Connie Mansfield ("Mansfield"), a DFS agent, met with her and instructed her to violate the Court's custody order and keep the children. Before instructing Arnott to do this, Mansfield failed to perform a basic investigation which would have revealed that the allegations were false.

As a result, Elmore was forced to file a motion with the Stone County Circuit Court to compel Arnott to return the children to his custody. The court granted the request on October 10, 2006. That same day, a deputy attempted to serve Arnott with this order at a restaurant in Republic, Missouri. Arnott responded by barricading herself and the children inside her car with her boyfriend, Defendant John Bradford. Bradford and Arnott then refused to comply with law enforcement requests to open the car doors for over two hours.

In the meantime, Arnott called Defendant Michael Castrodale, an ex-boyfriend and off-duty Springfield, Missouri, Police Department officer. He came to the scene and attempted to convince the law enforcement officers who were attempting to serve the court order to ignore it. His interference further delayed the children's return.

Eventually, the children were returned to their father. After Mansfield learned this, she endeavored to reverse this result. Despite clear evidence to the contrary, she and her supervisors, who are also Defendants, conducted a biased investigation with a preordained conclusion that John Elmore was abusing his children.

After four law enforcement agencies declined to investigate John Elmore for child abuse because of Arnott's history of making false allegations against him, Mansfield contacted a member of the Missouri Highway Patrol and had him produce the children the following morning at the offices of Defendant Child Advocacy Center ("CAC"). At CAC Mansfield directed Defendant Micki Lane, a CAC employee, to interview Rachael Elmore. Although Rachael made no representation that her father had ever abused her or her sister, Mansfield ordered Defendant Penkalski, a nurse, to conduct a full gynecological examination of the girls. Mansfield's supervisors and the CAC supervisors approved the exams, which terrified and humiliated the children.

Mansfield was determined to make a report finding that Elmore had abused the children and ignored evidence to the contrary. After conferring with Arnott, Mansfield produced a report that included a substantiated finding against Elmore. Her report purposefully omitted or concealed actions Mansfield had taken that would undermine the validity of her findings. The report also contained assertions Mansfield knew to be false.

Based on this report, Mansfield's DFS supervisors found probable cause of child abuse and entered information into the DFS database which branded Elmore a child abuser. This damaged Elmore's reputation and endangered his job as a law enforcement officer. Elmore appealed the DFS order in an administrative hearing.

In May of 2007, another judge confirmed an order finding Arnott had forced the girls to make false accusations. The order directed that the children should remain with John Elmore and terminated Arnott's right to unsupervised visitation. Despite this order, the DFS subsequently held that Mansfield's findings were substantiated.

As a result, Elmore was forced to file a petition for a trial *de novo* in Stone County Circuit Court. At the close of the DFS's case, the court granted judgment in Elmore's favor. The court's final judgment and opinion found that the DFS investigation was sloppy, one-sided, and incomplete; that Mansfield lied in her report; that the physical examinations of the children were illegal; and that the DFS intentionally and maliciously interfered with Elmore's rights.

## Discussion

**I.     John Elmore may bring this action on behalf of his minor daughters without formal appointment by the Court.**

In her initial brief (Doc. 31), Arnott asserts that all claims brought on the children's behalf should be dismissed because the Court has not appointed John Elmore as the children's representative. In their response, Plaintiffs note Elmore has had sole custody of the children since 2004. They also cite several recent analogous cases from the Eighth Circuit holding that a federal court need not formally appoint a parent as next friend.

4

Arnott's reply brief is silent with respect to this argument.[1]  The Court finds she has abandoned it.  Accordingly, this portion of the motion is denied.

## II. Plaintiffs have pled Arnott is a state actor.

Next, Arnott argues that the § 1983 claims against her should be dismissed because her actions were those of a private actor.  Plaintiffs respond that they have properly pled that Arnott was acting under color of state law by conspiring with, and acting with, state actors to violate John Elmore's constitutional rights.

Section 1983 provides that no person acting under color of state law may violate any rights secured by the Constitution or laws of the United States.[2]  Generally, § 1983 acts to prevent rights from infringement by government actors, not private parties. *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 590 (8th Cir. 2004).  "Where a private party acts under color of state law, however, it can be liable under § 1983." *Id.*  A private individual can be deemed a state actor for purposes of § 1983 when she acts "under cover of state law and performs a function traditionally exclusively reserved to the state." *Reasonover v. St. Louis Cnty, Missouri*, 447 F.3d 569, 584 (8th Cir. 2006).  To be liable under § 1983, a private actor must be a willing participant in a joint action with public servants who are acting under color of state law. *Sanders v. City of Minneapolis, Minn.*, 474 F.3d 523, 527 (8th Cir. 2007).  A private person does not conspire with a state official merely by invoking an exercise of the state official's authority. *Young v. Harrison*, 284 F.3d 863, 870 (8th Cir. 2002) (holding that private security guard's calling the police and bringing them to hotel suite was not enough to establish a

---

[1] The Court notes that the attorney who authored the motion and initial brief in support (Doc. 31) withdrew from the case shortly before Plaintiffs filed their response.  Arnott's present attorney then entered his appearance and filed the reply brief (Doc. 74).  In crafting the reply, new counsel has made a sound strategic decision to abandon the weakest arguments and focus on the strongest.

[2] "Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . for redress."  42 U.S.C. § 1983.

5

conspiracy for purposes of § 1983). To survive a motion to dismiss, "a plaintiff seeking to hold a private party liable under § 1983 must allege, at the very least, that there was a mutual understanding, or a meeting of the minds, between the private party and the state actor." *Mershon v. Beasley*, 994 F.2d 449, 451 (8th Cir. 1993).

The allegations in the Complaint are as follows: That Arnott's goal was to frame Elmore for child molestation; that Arnott and Mansfield conferred together several times for purposes of generating a report finding Elmore molested his children; that Mansfield ignored substantial evidence that Arnott was fabricating a claim; that Mansfield knew or should have known the allegations were not credible, and that Mansfield purposely omitted or concealed actions she took that would undermine the validity of her report's conclusions, specifically that she lied about the fact that she had had contact with Arnott. While it is a close call whether these allegations are sufficient to survive a motion to dismiss, the Court finds that if the allegations are accepted as true and read as a whole, they support an inference that Arnott conspired with Defendant Mansfield to file a false report accusing Elmore of molestation. Accordingly, this portion of the motion is denied.

**III.     The Court possesses subject matter jurisdiction over Counts I and II.**

Next, Arnott argues that even if she acted under color of state law, the § 1983 claims in Counts I and II should be dismissed against her because the domestic relations exception to federal jurisdiction divests this Court of subject matter jurisdiction. In response, Plaintiffs argue that the domestic relations exception applies only to cases based on diversity jurisdiction, not to lawsuits such as this one where a federal question is presented. They also contend that none of the clams in this case fall within the exception because nothing in this case invades the province of state domestic relations policy.

Arnott's reply brief is silent with respect on this subject. The Court finds Arnott has abandoned this argument. Accordingly, this portion of her motion is denied.

**IV.     The Court possesses jurisdiction over the state law claims brought against Arnott.**

In a one sentence argument in her initial brief, Arnott contends that if the Court dismisses the § 1983 claims against her then it does not have subject matter jurisdiction over the remaining state law claims against her.

Plaintiffs respond by noting that as long as the Court has original jurisdiction over at least one defendant in this action, it could choose to exercise its supplemental jurisdiction to hear related claims brought against additional parties, such as Arnott. 28 U.S.C. § 1367(a). Plaintiffs contend that if the Court declines to dismiss the § 1983 claims against Arnott, it possesses original jurisdiction over these claims and must exercise its supplemental jurisdiction to hear the related state-law claims against her. *ABF Freight Sys. v. Int'l Broth. of Teamsters*, 645 F.3d 954, 963 (8th Cir. 2011) ("Once original jurisdiction exists, supplemental jurisdiction over all related claims is mandatory, absent certain statutory exceptions.").

In her reply brief, Arnott does not respond to this argument. The Court holds she has abandoned this argument, and this portion of the motion is denied.

**V.      Count IV fails to state a cause of action under Missouri law.**

Arnott's next argument is that Count IV, which is captioned "Missouri Rev. Stat. § 453.110, Improper Transfer of a Child (John, Rachel, and Sarah Elmore)," fails to state a claim because the statute does not create a private right of action. In their response, Plaintiffs concede that this Missouri statute does not provide a private right of action, but argue that Count IV is not pled as a state-law claim but rather as a federal constitutional claim.

7

While Plaintiffs may have meant to plead Count IV as a federal claim, as written Count IV clearly pleads a state law cause of action. In contrast to Counts I, II, and III, which all plead federal claims, Count IV does not contain the words "federal," "constitutional," "§ 1983," or any other words which would make a reader believe it was pleading a federal law claim. Consequently, this portion of the motion is granted. Count IV is dismissed without prejudice.

**VI.     The Court orders additional briefing concerning Count V.**

Count V is brought on behalf of John Elmore only and pleads a state law tort claim for "Tortious Interference with Parental Rights." Arnott moves to dismiss, arguing in her initial brief: (1) that whatever Count V is titled, it is actually a claim for loss of alienation of children's affection, a claim that is not recognized under Missouri law; (2) it is unclear whether the tort of interference with parental rights is still recognized under Missouri law, since several state appellate courts have questioned its utility; (3) the claim should be dismissed because it fails to allege that Arnott abducted the children, an element of the tort; and (4) even if properly pled, this claim is barred because it could have been raised at the state court hearing on the motion to compel return of the children, and Missouri law prevents claims arising from the same event from being tried piecemeal.

In response, Elmore argues (1) that tortious interference with parental rights is a viable cause of action, and he has properly plead it, and (2) this claim was not required to be brought in the state court hearing because that action was lodged against the state agency that seized the children, not Defendant Arnott.

In her reply brief, Arnott concedes that Missouri still recognizes such a claim, but argues: (1) this case is not one of those rare cases where a tortious interference claim is actionable; and

(2) the claim should be barred as improper piecemeal litigation. The Court finds no merit with respect to the second argument.

With respect to the first argument, Arnott intimates that Missouri courts have limited, or would limit, the cause of action to those cases where the interference with the parental right was substantial in duration and effect, and that the interference here was not sufficiently substantial to be actionable. This is a persuasive argument. Unfortunately, it is raised for the first time in the reply brief when it could have been raised earlier. Although the Court usually strikes such arguments, the Court will consider it because it is arguably a fair reply to the arguments made in the brief in opposition. The Court also notes that this argument is potentially dispositive and ruling on this issue now might eliminate the need for briefing this issue at the summary judgment stage of the litigation. Additionally, any concerns about fairness can be addressed by allowing Elmore to file a sur-response.

Accordingly, this portion of the motion is taken under advisement. The Court orders the parties to submit additional briefing addressing two questions: (1) whether Missouri law limits, or would limit, any claim for tortious interference with parental rights to those cases where the interference was substantial in duration and effect; and (2) if so, whether the interference alleged here is actionable. Plaintiffs' brief shall be filed on or before June 19, 2012 and shall not exceed five pages. Arnott's sur-reply brief shall be filed within fourteen days after Plaintiffs' brief is filed. It is limited to three pages and may address only those arguments raised in Plaintiffs' sur-response.

**VII. The Complaint does not establish that Count VIII, the defamation claim, is barred by the statute of limitations.**

In Count VIII, brought on behalf of John Elmore only, alleges that Defendant Arnott and others "created or caused to be created false reports indicating that Mr. Elmore had abused his children. These reports were entered into the DFS database, where they could be searched by law enforcement personnel. Defendant Arnott also published these reports to various media agencies." Compl. at ¶ 124. Elmore also alleges that as a result of the false report and inadequate review process he was forced to file suit in the Circuit Court of Stone County, Missouri to clear his name, and that on July 1, 2009, the court granted judgment in his favor. Compl. at ¶¶ 79-80.

Arnott notes that Missouri has a two year statute of limitations for defamation. She contends this statute of limitations began running no later than July 1, 2009,[3] by which time the Department of Family Services' reports had been created and published, but that Elmore filed this lawsuit more than two years later, on October 4, 2011. Elmore responds that bar by a statute of limitations is not ordinarily grounds for a Rule 12(b)(6) dismissal. He contends that while there is no doubt that Arnott made defamatory statements more than two years before he filed suit, he needs to conduct discovery to prove that defamatory publication continued after October 4, 2009. In her reply, Arnott asserts that information in the Complaint indicates that the statute of limitations on the defamation claim has run.

"Bar by a statute of limitation is typically an affirmative defense, which the defendant must plead and prove." *Jessie v. Potter*, 516 F.3d 709, 713 n.2 (8th Cir. 2008). "A defendant does not render a complaint defective by pleading an affirmative defense." *Id.* "Thus, as a

---

[3] In her reply brief, Arnott argues for the first time that Elmore's damages were ascertainable two years earlier, on June 1, 2007. Because this argument is raised for the first time in a reply brief and it could have been raised earlier, the Court will not consider it at the present time. Arnott may renew this argument at the summary judgment stage.

10

general rule, the possible existence of a statute of limitations defense is not ordinarily a ground for Rule 12(b)(6) dismissal, unless the complaint itself establishes the defense." *Walker v. Berrett*, 650 F.3d 1198, 1203 (8th Cir. 2011) (internal citations and alterations omitted). Additionally, under Missouri law, the statute of limitations does not run from the date the defamatory statement is made or published but from the date on which the damage from the false statements appears and is ascertainable. *See Thurston v. Ballinger*, 884 S.W.2d 22, 26 (Mo. Ct. App. 1994).

In the present case, although it is a close call, the Court finds the Complaint does not establish that the statute of limitations on the Elmore's defamation claim has run. Although the Complaint clearly alleges that Arnott made defamatory statements more than two years before Arnott filed suit, it does not contain statements from which the Court can infer that Arnott ceased making or publishing defamatory statements after this date. Accordingly, the Court cannot dismiss the defamation claim at this time.

**VIII.   Count IX, the state law conspiracy claim, states a cause of action.**

Count IX is a state law claim for conspiracy brought on behalf of all Plaintiffs. It alleges that Defendants conspired to deprive the Plaintiffs of their constitutional rights by knowingly and willfully separating the children from their father. In moving to dismiss this count, Arnott repeats her argument that Plaintiffs have failed to plead allegations sufficient to support a finding that there was an actual meeting of the minds between Arnott and any of the other defendants.

As discussed in section II of this order, the Court finds the Complaint's allegations support an inference that Arnott conspired with Defendant Mansfield to file a false report accusing John Elmore of molestation. This is enough to survive a motion to dismiss. Thus, this portion of the motion is denied.

11

**IX.    Count X fails to state a claim for intentional infliction of emotional distress.**

Count X is brought by all Plaintiffs and asserts a state law claim for intentional infliction of emotional distress. It contends that under the circumstances all Defendants' actions were extreme and outrageous and were undertaken with intent or knowledge that their conduct was likely to inflict severe emotional distress on the Plaintiffs.

Arnott argues that Plaintiffs have failed to plead that the emotional distress resulted in bodily harm. In reply, John Elmore does not object to dismissing his claim for intentional infliction of emotional distress. The children, however, argue their claims are well-pled. They contend that when construed as a whole, the Complaint alleges that as a result of Arnott's actions they "were forced to falsely claim that their father sexually abused them, forced to undergo an invasive physical exam, and were taken from their loving custodial parent."

To state a claim for intentional infliction of emotional distress, a plaintiff must allege that the emotional distress *resulted in* bodily harm. *Crow v. Crawford & Co.*, 259 S.W.3d 104, 119 (Mo. Ct. App. 2008). That is, the severe emotional distress must manifest itself in some physical way. In the present case, the children allege that the physical examination caused them emotional distress, not that the emotional distress was so severe that it resulting in symptoms of bodily distress. Consequently, they have failed to properly plead this claim. This portion of the motion is granted.

**X.    Section 210.135 does not provide Arnott with immunity to the state law claims.**

Finally, Arnott contends that under state law she is entitled to immunity on the state law claims because her actions were taken in cooperation with an official investigation into an allegation of child abuse. In relevant part, Missouri law provides that:

> Any person . . . in cooperation with the Division, or any other law enforcement agency, juvenile office, court, or child protective

12

> service agency of this or any other state, in any of the activities pursuant to §§ 210.110 to 210.165 or any other allegation of child abuse, neglect or assault, pursuant to §§ 568.045 to 568.060, RSMo., shall have immunity from any liability, civil or criminal, that otherwise might result by reason of such actions. Provided, however, any person . . . intentionally filing a false report, acting in bad faith, or with ill intent, shall not have immunity from any liability, civil or criminal.

Mo. Rev. Stat. § 210.135.1.

In their response, Plaintiffs note that filing a false report, as they have alleged, is not protected by the statute. Arnott does not respond to this persuasive argument in her reply, and the Court finds she has abandoned it. Accordingly, this portion of the motion is denied.

## Conclusion

For the reasons discussed above, Defendant Arnott's Motion to Dismiss (Doc. 18) is GRANTED IN PART. Counts IV and X are dismissed without prejudice against Arnott. The Court orders the parties to submit additional briefing with respect to Count V. The balance of the motion is denied.

**IT IS SO ORDERED.**

Dated: June 5, 2012          /s/ Greg Kays
                             GREG KAYS,
                             UNITED STATES DISTRICT JUDGE