IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | | |
|---|---|---|
| JOHN P. ELMORE, et. al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 3:11-cv-5088-DGK |
| | ) | |
| CONNIE MANSFIELD, et. al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER GRANTING IN PART CASTRODALE'S MOTION TO DISMISS

This case arises from allegations that Defendant Joanna Arnott ("Arnott") and the other Defendants made false sexual abuse claims against Plaintiff John Elmore ("Elmore") in order to remove his daughters, Plaintiffs S.L.E and R.J.E., from his custody. Plaintiffs allege that as a result of Defendants' actions, the children were taken from Elmore and subjected to traumatic and humiliating gynecological examinations. Plaintiffs have brought sixteen claims for relief under 42 U.S.C. § 1983 and Missouri state law.

Now before the Court is Defendant Michael Castrodale's ("Castrodale") Motion to Dismiss Plaintiffs' Second Amended Complaint (Doc. 202).[1] Plaintiffs sued Castrodale, who is employed as a police officer, for allegedly: (1) attempting to persuade other police officers not to enforce a court order compelling the return of Elmore's children; and (2) for writing a letter to the Missouri Department of Family Services falsely claiming he knew that Elmore was abusive of his daughters.

For the following reasons, the motion is GRANTED IN PART. Counts VII-IX are dismissed without prejudice against Castrodale.

---

[1] Also pending is Castrodale's Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. 142). Because the Second Amended Complaint supersedes the First Amended Complaint, this motion is denied as moot.

**Background**

The allegations in the Second Amended Complaint ("the Complaint") can be summarized as follows.

In the late 1990s, Plaintiff John Elmore ("Elmore") and Defendant Joanna Arnott ("Arnott") had a romantic relationship which resulted in the birth of two children, Plaintiff R.J.E. and Plaintiff S.I.E. After their relationship ended, the two engaged in a contentious custody battle. The Circuit Court of Stone County, Missouri, initially awarded the parents joint custody. In 2004, after years of Arnott failing to abide by the custody order and obstructing Elmore from seeing his children, the Stone County Circuit Court granted full legal custody to Elmore, with Arnott retaining visitation rights.

In an attempt to regain custody, Arnott repeatedly made false allegations that Elmore was sexually abusing the children. Law enforcement and child welfare authorities in southwest Missouri quickly became familiar with these accusations, and that they were unfounded. The Circuit Court of Stone County, Missouri also considered these allegations and rejected them.

On October 6, 2006, while the children were in Arnott's custody for a scheduled visitation, an anonymous female called the Missouri Department of Family Services ("DFS") claiming that Elmore had sexually abused his children. The caller's allegations matched those that the Stone County Circuit Court had previously rejected. Defendant Connie Mansfield ("Mansfield"), a DFS agent, received the call and opened a case file on the matter.

On October 8, 2006, Mansfield attempted to interview R.J.E. at Arnott's home. R.J.E. refused to answer Mansfield's questions. Arnott then gave Mansfield letters and drawing Arnott claimed R.J.E. independently produced that indicated she had been sexually abused by Elmore. The letters were obviously false.

Mansfield instructed Arnott to violate the custody order, which stated Arnott was to return the children to Elmore, and instead keep the children in her custody. This violated the court's custody order and was contrary to DFS policies and procedures.

Before instructing Arnott to keep the children, Mansfield failed to undertake a basic check into the circumstances surrounding the custody proceedings. If Mansfield had performed a basic investigation, she would have learned that Arnott had a history of making false allegations, and that she was notorious in the law enforcement and child welfare communities for making such allegations.[2]

Arnott kept the children and Elmore was forced to file a motion with the circuit court to compel their return.

On October 10, 2006, the circuit court granted Elmore's request. Later that day, when a deputy attempted to serve Arnott with a court order, Arnott barricaded herself and the children inside her car and refused to open the doors for two hours. The encounter devolved into a "screaming, hysterical scene." Arnott called Defendant Michael Castrodale, an ex-boyfriend who was a Springfield, Missouri Police Department officer. Castrodale came to the scene and tried to persuade the law enforcement officers there to ignore the order and allow the children to stay with their mother, delaying their return to Elmore. Eventually, they were returned to Elmore's custody.[3]

When Mansfield learned the children had been returned to their father, she and her DFS supervisors undertook an investigation designed to find that Elmore was abusing the children. She appealed to several law enforcement agencies to intervene and investigate Elmore on

---

[2] Again, this is a summary of the allegations in Plaintiffs' Second Amended Complaint.
[3] The Complaint is silent as to exactly how or when the children were returned.

criminal grounds. All of these agencies declined based on Arnott's history of making false accusations.

On the evening of October 10, 2006, Mansfield contacted a state highway patrolman and directed him to take the children to the offices of Defendant Child Advocacy Center ("CAC") the next morning. When the children arrived at the CAC on October 11, 2006, Mansfield directed an employee, Defendant Micki Lane, to interview R.J.E. She also ordered a nurse, Defendant Melissa Penkalski, to conduct a full gynecological examination of the girls. These exams were approved by Mansfield's supervisors and the CAC supervisors and conducted by Defendant Penkalski, a registered nurse and a CAC agent. The exams terrified and humiliated the children.

Despite a total absence of evidence that Elmore had ever abused either of his children, Mansfield was insistent that Elmore had abused his children and was determined to make a report that made a finding against him.

At the urging of Defendants Arnott and Mansfield, Castrodale wrote Mansfield a letter "stating that he knew Mr. Elmore to be abusive of his daughters." These accusations were false and designed to provide false evidence for Mansfield's report.

Mansfield eventually wrote a knowingly false report which substantiated a finding of sexual abuse against Elmore. In the report, Mansfield purposely omitted or concealed actions she took which would undermine the validity of her findings, including failing to divulge her ongoing conversations with Arnott and Castrodale.

Based on this report, Mansfield's DFS supervisors found probable cause of child abuse and entered this information in a DFS database. Contrary to Missouri law and DFS policy, at no point prior to entering a finding against Elmore did any DFS or CAC employee interview Elmore or examine the numerous court orders entered by the Stone County Circuit Court. Entering this

4

information in the database damaged Elmore's reputation and endangered his employment as a deputy sheriff.

To clear his name and preserve his job, Elmore requested a full hearing pursuant to DFS's appeals procedures. He also filed a complaint with the Child Advocate for the state of Missouri. Instead of investigating, as he was required to do, the Child Advocate did nothing.

In May of 2007, prior to the DFS appeals hearing, the Stone County Circuit Court conducted a full hearing on Arnott's request for custody. At the conclusion of the hearing, the court entered an order finding that Arnott had forced the girls to make false accusations. The court directed that the children remain in Elmore's custody and terminated Arnott's rights to unsupervised visitation.

On May 22, 2007, despite the available evidence indicating Elmore had not abused his children, the DFS completed its hearing and concluded that Mansfield's findings were substantiated.

In order to clear his name, Elmore filed a petition for a trial *de novo* in the Stone County Circuit Court. After holding a two-day trial, on July 1, 2009, the circuit court granted judgment in Elmore's favor, finding that the DFS investigation was sloppy, that Mansfield had lied in her report, that the children's examinations were illegal, and that the DFS had intentionally and maliciously interfered with Elmore's rights.

The above summarizes the allegations in the Second Amended Complaint. On October 4, 20011, Plaintiffs filed the pending lawsuit.

## Standard of Review

A complaint "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). To avoid dismissal, a complaint must include

5

"enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Benton v. Merrill Lynch & Co., Inc.*, 524 F.3d 866, 870 (8th Cir. 2008). In ruling on a motion to dismiss, the court assumes the facts alleged in the complaint are true and draws all reasonable inferences from those facts in the plaintiff's favor. *Monson v. Drug Enforcement Admin.*, 589 F.3d 952, 961 (8th Cir. 2009).

## Discussion

In their response, Plaintiffs clarify that Counts I – IV, VI, X –XII, and XV – XVI are not brought against Castrodale. Also, by not responding to Castrodale's argument that he cannot be liable on Count VIII because he is entitled to qualified immunity, Plaintiffs concede this point and so Count VIII is dismissed against Castrodale. The parties dispute whether the following counts state a claim for relief against Castrodale: Count V, a § 1983 claim for a due process violation; Count VII, a § 1983 claim for "failure to intervene;" Count IX, a state law claim for malicious prosecution; Count XIII, a state law claim for defamation; and Count XIV, a state law claim for conspiracy.

**I.     Count V fails to state a Section 1983 due process claim against Castrodale.**

Count V alleges that Castrodale, acting "individually, jointly, and in conspiracy" with other Defendants acting "under color of law and within the scope of their employment, deprived

6

[Elmore] of his constitutional right to an impartial adjudication" of the child abuse claims of levied against him. (Doc. 192 at ¶ 109.) It alleges that Defendants "withheld exculpatory evidence, thereby misleading and misdirecting the DFS and state-court civil proceedings against Plaintiff" (*id*. at ¶ 110); knowingly made false statements that Elmore abused his children, *id.* at 113; and "fabricated false reports . . . and engaged in deliberate deception, all to institute and continue the DFS and state-court civil proceedings against Plaintiff and to procure an adverse finding against Plaintiff in those proceedings." (*Id.* at ¶ 111.) "As a result of these violations of his constitutional right to a fair trial," Elmore was damaged. (*Id.* at ¶ 116.)

Castrodale first argues these allegations are insufficient to state a claim for relief that is plausible on its face as required by *Iqbal*, 556 U.S. at 678, because they are too vague. Castrodale argues it is difficult to tell if he is even named in some of the counts. While the Court is sympathetic to Castrodale's position—there are 14 different Defendants in this case and the Complaint uses the word "defendants" indiscriminately, sometimes applying to Castrodale, sometimes not—the allegations in Count V are not impermissibly vague. When read in conjunction with the Complaint's general assertions, it is clear that Count V alleges that (1) Castrodale was employed as a police officer by the Springfield, Missouri Police Department; (2) that while Arnott was barricaded in her car refusing to return the children, Castrodale tried to persuade other law enforcement officers not to enforce a court order compelling the children's return; (3) Castrodale wrote Mansfield a letter "stating that he knew Elmore to be abusive of his daughters" and that these accusations were false; and (4) that these actions violated Elmore's right to a fair trial. These allegations are reasonably specific. That said, they fail to state a due process claim under § 1983 against Castrodale.

7

### A. Count V does not state a claim for a procedural due process violation.

Due process claims fall into two categories, procedural due process and substantive due process. In procedural due process claims, the focus is not on whether there has been a deprivation of a constitutionally protected interest, but on whether there has been "the deprivation of such an interest *without due process of law*." To plead a procedural due process claim, a plaintiff must allege (1) that he had a life, liberty, or property interest protected by the due process clause of the Fourteenth Amendment; (2) that he was deprived of this interest within the meaning of the due process clause; and (3) that the state did not afford him adequate procedural rights before depriving him of this interest. *Vaughn v. Ruoff*, 304 F.3d 793, 796 (8th Cir. 2002) (citing *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999)). Elmore has not alleged a valid procedural due process claim here because he has not alleged that the *state* failed to afford him adequate procedural rights, that is, that the state of Missouri failed to provide him with adequate process. Here the state of Missouri not only provided him with due process (a right to appeal the initial DFS determination, a trial, etc.), but at the last step in the process, the trial de novo in the Stone County Circuit Court, the state remedied at least part of the wrong here by granting judgment in his favor. Thus there is no procedural due process violation here.

### B. Count V does not state a claim for a substantive due process violation.

Elmore cannot maintain a substantive due process claim against Castrodale either. The elements of a substantive due process claim are (1) the defendant violated a fundamental constitutional right of the plaintiff; and (2) this violation shocks the contemporary conscience. *C.N. v. Willmar Public Schools, Indep. School Dist. No. 347*, 591 F.3d 624, 634 (8th Cir. 2010). This is a high standard. *Id.* To rise to the level of a substantive due process violation, a claim must involve a violation of personal rights so severe and "so inspired by malice or sadism rather

than a merely careless or unwise excess of zeal that it amounted to brutal and inhumane abuse of official power literally shocking to the conscience." *Id.* (quoting *Golden v. Anders*, 324 F.3d 650, 652-53 (8th Cir. 2003)).

Elmore suggests Castrodale is liable under section 1983 because "his reckless or intentional failure to investigate amounted to a due process violation" (Doc. 182 at 10). He cites two Eighth Circuit decisions in support: *Moran v. Clarke*, 296 F.3d 638 (8th Cir. 2002) (holding that police investigators who purposefully conspired to manufacture false evidence and to "scapegoat" the plaintiff could be liable for a substantive due process violation) and *Wilson v. Lawrence County*, 260 F.3d 946 (8th Cir. 2001) (holding reckless failure by police to investigate other leads post-arrest could be actionable as a due process violation if the failure shocks the conscience). Neither case is analogous to this one. In both *Moran* and *Wilson* the defendants were police officers who had been formally tasked with investigating the plaintiff for a crime, thus under *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny the law imposed a duty on the officers to conduct a fair investigation of the plaintiff. *See Wilson*, 260 F.3d at 957.

The facts here are different. This lawsuit does not arise in the context of a criminal case, but in an administrative proceeding initiated by the Missouri Department of Family Services. Additionally, Castrodale was never tasked with investigating Elmore; he simply provided a letter to Mansfield. Apart from the rote allegation that "during all relevant times, Defendant Castrodale was acting under color of state law and within the scope of his employment," there is no allegation Castrodale signed the letter in his official capacity as a police officer, nor could the Court draw such an inference from the facts alleged. On the contrary, given the Complaint's other allegations, the most reasonable inference is that Castrodale sent the letter because he had a personal relationship with Arnott.

9

Consequently, any failure on his part to conduct a fair investigation before writing his letter is not actionable as a substantive due process violation. While Elmore has a fundamental constitutional right to a fair investigation from a police officer in a criminal case, *Wilson v. Lawrence Cnty.*, 260 F.3d 946, 957 (8th Cir. 2001), he does not have a constitutional right to fairness from a non-state actor in an administrative proceeding. Accordingly, Count V is dismissed against Castrodale.

II.     **Count VII fails to state a section 1983 failure to intervene claim against Castrodale.**

Count VII alleges that Castrodale is liable under section 1983 for failure to intervene. The allegations, in their entirety, are as follows:

> Count VII: 42 U.S.C. § 1983
> Failure to Intervene
>
> 123. Plaintiff incorporates all of the paragraphs in this Complaint as if fully restated here.
>
> 124. During the constitutional violations described in this Complaint, one or more of the Defendants stood by without intervening to prevent the misconduct.
>
> 125. As a result of the Defendants' failure to intervene to prevent the violation of Plaintiff's, R.J.E.'s, and S.I.E.'s constitutional rights, Plaintiff, R.J.E., and S.I.E. suffered pain and injury, as well as emotional distress.
>
> 126. These Defendants had a reasonable opportunity to prevent this harm, but failed to do so.
>
> 127. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.
>
> 128. The misconduct described in this Count was undertaken under color of state law, and the Defendants acted at all times within the scope of their employment.

> 129. As a result on this misconduct, Plaintiff, R.J.E. and S.I.E. sustained, and continue to sustain, injuries including pain and suffering.

(Doc. 182). These allegations fail to state whether Castrodale was one of the "one or more" Defendants who failed to intervene, much less state what acts Castrodale did or failed to do which makes it plausible that he is liable on this claim. These are precisely the kind of formulaic allegations that should be dismissed under *Iqbal*. Accordingly, Elmore has failed to state a claim that he is entitled to relief against Castrodale on this count, and Count VII is dismissed against Castrodale.

### III.  Count IX fails to state a claim for malicious prosecution against Castrodale.

Count IX alleges a Missouri state law claim for malicious prosecution. It alleges "Defendants caused Plaintiff to be improperly subjected to the DFS and state-court civil proceedings against him . . ." (Doc. 192 at ¶ 139). Under Missouri law, a malicious prosecution claim must plead: (1) the commencement of an earlier suit against the plaintiff; (2) that the defendant instigated the suit; (3) the suit was terminated in plaintiff's favor; (4) lack of probable cause for the suit; (5) malice by defendant in instituting the suit; and (6) that the suit damaged the plaintiff. *State ex rel. Police Ret. Sys. of St. Louis v. Mummert*, 875 S.W.2d 553, 555 (Mo. banc 1994).

The elements of a malicious prosecution arising from an administrative proceeding are the same as one arising from a criminal prosecution. *Davis v. Bd. of Educ. Of City of St. Louis*, 963 S.W.2d 679, 685-86 (Mo. Ct. App. 1998). But in an agency setting, whether the defendant has initiated the charges is determined by how the charges are brought to the agency for adjudication. *Id.* at 686. Where an agency official has sole authority to initiate the action, persons who provide information to that official are not held to have initiated or taken an "active

11

Case 3:11-cv-05088-DGK   Document 250   Filed 02/07/13   Page 11 of 14

part" in initiating the action. *Id.* An individual is not liable for malicious prosecution if he merely provides information concerning the plaintiff's conduct to the agency officer who possesses the authority to issue charges. *Id.* Complaints made to the Missouri DFS fall into this category because only DFS officials decide whether to conduct an investigation and issue charges. S*ee* Mo. Rev. Stat. § 210.145.3 ("Upon receipt of a report, *the division* shall determine if the report merits investigation."). Consequently, because the DFS possessed sole authority to launch an investigation or bring charges, as a matter of law Castrodale could not have instigated the proceedings against Elmore by sending a letter making allegations.

Count IX is dismissed against Castrodale.

### IV. The Court cannot hold that Count XIII is barred by the statute of limitations.

Count XIII is Plaintiff's state law claim for defamation. It alleges Castrodale and others "created or caused to be created false reports indicating that Mr. Elmore had abused his children. These reports were entered into the DFS database, where they could be searched by law enforcement personnel." (Doc. 192 at ¶ 162.) As a result of these false reports, Elmore suffered damages and incurred legal expenses clearing his name so he would not lose his job in law enforcement. (Doc. 192 at ¶ 164.)

Castrodale argues this claim is barred by Missouri's two-year statute of limitations for defamation. He asserts the statute of limitations began running on May of 2007, when the DFS appeal process had been completed. Castrodale cites paragraph 77 of the Complaint in support, which states that, "[o]n May 22, 2007, despite all of the available evidence that indicated Mr. Elmore had not abused his children, DFS completed its hearing and concluded that Defendant Mansfield's findings were substantiated." Alternately, Castrodale argues Elmore knew of the allegedly defamatory statements by July 1, 2009, when the Stone County Circuit Court held the

12

trial de novo. Elmore suggests that in either case the statute has run because Elmore filed his lawsuit on October 4, 2011.

"Bar by a statute of limitation is typically an affirmative defense, which the defendant must plead and prove." *Jessie v. Potter*, 516 F.3d 709, 713 n.2 (8th Cir. 2008). "A defendant does not render a complaint defective by pleading an affirmative defense." *Id.* "Thus, as a general rule, the possible existence of a statute of limitations defense is not ordinarily a ground for Rule 12(b)(6) dismissal, unless the complaint itself establishes the defense." *Walker v. Berrett*, 650 F.3d 1198, 1203 (8th Cir. 2011) (internal citations and alterations omitted).

Under Missouri law, the statute of limitations for defamation runs from the time "when the fact of damages appears." *Thurston v. Ballinger*, 884 S.W.2d 22, 26 (Mo. Ct. App. 1994). In the present case, the Court cannot ascertain from the Complaint when the fact of damages first appeared; the Complaint simply makes no allegations from which the Court can make this determination. Consequently, the Court cannot grant this portion of Castrodale's motion to dismiss.

## V. Count XIV adequately pleads a state law claim of conspiracy.

Count XIV asserts a state law claim for conspiracy. It incorporates all of the Complaint's other allegations and also asserts that the

> DFS Defendants, CAC Defendants, and Defendants Arnott, Castrodale, and Morrow, by their actions, conspired to deprive [Plaintiffs] of their constitutional rights by knowingly and willfully separating the children from their father, subjecting the children to invasive and humiliating SAFE examinations, and persisting in making findings against Mr. Elmore that caused him to incur substantial legal expenses to clear his name, despite knowledge that the accusations against Mr. Elmore were false and there was no reasonable basis to remove the girls from his custody or conduct the SAFE exams.

13

Castrodale argues this count should be dismissed because under Missouri law a civil conspiracy claim is not by itself actionable, an underlying tort must also be committed, *see Tindall v. Holder*, 892 S.W.2d 314, 321 (Mo. Ct. App. 1994), and the Complaint fails to establish that Castrodale committed any underlying tort. As discussed above, the Court finds the Complaint sufficiently pleads a claim for defamation, thus the Complaint has stated an underlying tort against Castrodale. Accordingly, this portion of the motion is denied.

## Conclusion

For the reasons discussed above, the Motion to Dismiss (Doc. 202) is GRANTED IN PART. Counts VII-IX are dismissed without prejudice against Castrodale. The balance of the motion is denied.

**IT IS SO ORDERED.**

Dated: February 7, 2012      /s/ Greg Kays
                             GREG KAYS,
                             UNITED STATES DISTRICT JUDGE